UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| LARRY LEE SHEPPERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 17-029-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Larry Lee Shepperson and Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("the Commissioner.") [Record Nos. 9, 11] Shepperson argues that, following an administrative hearing, the Administrative Law Judge ("ALJ") assigned to his case erred in concluding that he was not disabled within the meaning of the Social Security Act (the "Act"). Specifically, he asserts that the ALJ failed to properly consider the opinion evidence in determining his residual functional capacity ("RFC") and that he did not follow proper procedures for admitting evidence during the oral hearing. Shepperson requests an award of benefits in his favor or, alternatively, that this matter be remanded for further administrative proceedings.

The Commissioner contends the ALJ properly evaluated the evidence, that any alleged errors were harmless, and that the ALJ's decision should be affirmed. She further contends that the ALJ's decision is supported by substantial evidence.

- 1 -

For the reasons that follow, the claimant's motion will be granted, in part, and the matter will be remanded for further proceedings.

## I. Procedural History

Shepperson filed a Title II application for a period of disability and disability insurance benefits ("DIB") on May 20, 2014. [*See* Administrative Transcript, hereinafter "Tr.," 152-53.] He alleged an onset of disability date of October 15, 2010, but was later permitted to amend the onset date to January 31, 2014. [Tr. 152, 42] Shepperson requested a hearing before an administrative law judge after the application was denied initially and on reconsideration. [Tr. 98, 102, 112] He appeared before ALJ Don Paris for an administrative hearing in Lexington, Kentucky, in December 2015. [Tr. 39-67] ALJ Paris denied the request for benefits in a written decision dated February 3, 2016, which the Appeals Council affirmed. [Tr. 25-33, 1-20] Accordingly, the claimant has exhausted his administrative remedies and this matter is ripe for review under 42 U.S.C. § 405(g).

## II. Background

Shepperson was 54-years-old at the time of the ALJ's decision. [Tr. 33, 43] He worked for 24 years repairing lawn and garden equipment, but quit in 2010 due to health problems. [Tr. 171-73] Shepperson believed his ability to work was limited by spinal arthritis, hypertension, anxiety, and depression. [Tr. 171] He was diagnosed with a herniated disc and underwent a laminectomy in 2014. [Tr. 49] Shepperson continued regular treatment with a pain specialist when surgery did not resolve his symptoms. [Tr. 50]

Shepperson used a cane and estimated that he could only walk about 20 feet before stopping due to pain. [Tr. 52, 59] He reported that he spent most of his time lying on a couch, in a recliner, or in bed to take pressure off of his low back. [Tr. 53] He advised the ALJ that he wore a CPAP machine at night and was able to sleep only three to four hours. [Tr. 55] Shepperson had a driver's license but did not drive due to the effects of his medications. He reported that he rarely left his house and that he has no hobbies. [Tr. 58]

Shepperson established a treatment relationship with Dr. Padma Rao, a primary care provider, in October 2011. [Tr. 260] Rao treated Shepperson for various complaints including an upper respiratory infection, shoulder pain, and fatigue. [Tr. 261-97] The claimant underwent an x-ray of his right shoulder in November 2011, which revealed mild degenerative changes in the AC joint. [Tr. 258]

Shepperson began to complain of low back pain in early 2014. [Tr. 321] He underwent an x-ray of the lumbar spine in May of 2014 which revealed mild degenerative changes and facet degeneration. [Tr. 328] An MRI performed shortly thereafter indicated that Shepperson had an extruded disc fragment at the T12-L1 level, a seven millimeter mass at the L3-L4 level, and multilevel degeneration with significant foraminal stenosis at L5-S1. [Tr. 336-37]

Rao referred Shepperson to Dr. Hammad Malik at Georgetown Pain Management in May 2014. [Tr. 340-44] Shepperson exhibited a mildly antalgic gait and moderately restricted extension of his low back. [Tr. 342] He complained of numbness and tingling in both legs, but straight leg raising was asymptomatic bilaterally. [Tr. 343] Malik prescribed medication to manage Shepperson's pain, which he rated as nine on a scale of

ten. *Id.* Shepperson also continued treating with Dr. Rao, but visited the emergency room on occasion and consulted with an orthopedist, Dr. Arms. [Tr. 345, 377] Shepperson also sought treatment with Dr. Ryan Cassidy, an orthopedic spine surgeon at the University of Kentucky. Dr. Cassidy referred Shepperson to a neurosurgeon and for physical therapy. [Tr. 385-94] The claimant attended some physical therapy sessions, but the range of treatment was limited due to his complaints of severe pain. [Tr. 385-88] Shepperson eventually reported that therapy made his symptoms worse. [Tr. 403]

Dr. Robert Nold performed a consultative physical examination in July 2014. [Record No. 365-70] Nold noted that Shepperson's chief complaint was bilateral low back pain. Shepperson walked without an assistive device, but could not walk on his heels or toes, and was unable to squat. [Tr. 366-67] He was able to flex his shoulders to 130 degrees, but was limited beyond that due to back pain. [Tr. 366] Nold determined that Shepperson could "barely bend 30 degrees forward" and that he would have difficulty bending and lifting "much over 10 to 15 pounds on occasion." [Tr. 368] Further, he opined that Shepperson could not lift items "completely above his shoulder level" because of low back pain. *Id.*

Shepperson was seen by Dr. Travis Hunt in September 2014 for a second opinion regarding his back impairment. Dr. Hunt performed a laminectomy the following month. [Tr. 399-400] Shepperson reported, however, that his symptoms did not improve after surgery. [Tr. 402] Physician's Assistant Michael Jones submitted an opinion regarding Shepperson's ability to work in October 2014. [Tr. 397] Jones indicated that Shepperson would be unable to perform even sedentary work. Additionally, he believed that

Shepperson would be able to stand or walk only one to two hours per day. [Tr. 397] He suggested that Shepperson would be absent from work more than four times per month because of his impairments. Jones further expressed that these limitations had been in effect since September 18, 2014. [Tr. 397]

Dr. Hunt completed a functional assessment form in April 2015. [Tr. 452] Like Jones, Hunt opined that Shepperson could not perform even sedentary work. He also indicated that Shepperson would only be able to stand or walk for one to two hours and sit for three to four hours. [Tr. 452] Hunt advised that Shepperson should follow-up with pain management. It appears that the claimant did so in January 2015 and continued monthly visits through May 2015. [Tr. 405-21] However, Shepperson continued to rate his lumbar pain as nine out of ten. *Id.*

Doctor Allen Dawson evaluated Shepperson's record on September 17, 2014. [Record No. 77] Dawson noted Shepperson's diagnoses of degenerative disc and joint disease and found many of his claims fully credible. However, he could not account for Shepperson's reduced grip strength and noted that there was full range of motion of the neck and shoulders. Dawson believed that Shepperson could lift 20 pounds occasionally, 10 pounds frequently, and that he could stand, walk, and sit about six hours in an eight-hour workday. [Tr. 75] He opined that Shepperson's ability to push and pull was unlimited, but that he could climb stairs and ramps frequently; ladders, ropes and scaffolds occasionally; and that he could stoop occasionally. [Tr. 76] He believed that Shepperson's ability to reach and lift overhead was limited bilaterally due to neck pain. [Tr. 76]

Jack Reed, M.D., evaluated Shepperson's record on reconsideration on October 8, 2014, and reached the same conclusions as Dr. Dawson. [Tr. 89-92] Additionally, Reed believed that Dr. Nold's opinion was an overestimate of the severity of Shepperson's restrictions and was based on a snapshot of Shepperson's functioning. [Tr. 92]

After considering all evidence presented, ALJ Paris determined that Shepperson did not have an impairment or combination of impairments that met a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. However, he concluded that Shepperson suffered from the following severe impairments: degenerative disc disease and degenerative changes of the shoulders. The ALJ found that Shepperson had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with:

> lifting/carrying 20 pounds occasionally and 10 pounds frequently; standing/walking 6 hours in an 8-day workday; sitting 6 hours in an 8-hour workday; frequent climbing ramps or stairs; occasionally climbing ladders/ropes; occasionally stooping; frequent kneeling and crouching; frequent overhead reaching with the right and left upper extremities; and avoid full-body vibration.

Based on this determination, the ALJ found that there were jobs that existed in significant numbers in the national economy that Shepperson could perform. [Tr. 31] Accordingly, he concluded that Shepperson had not been under a disability during the relevant period. [Tr. 32]

### III. Standard of Review

Under the Social Security Act, a "disability" is defined as the inability to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that is expected to last at least a year. *Rabbers v. Comm'r of Soc. Sec.*, 582

F.3d 647, 652 (6th Cir. 2009) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform her past work. If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work

available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV.

### A. Evaluation of the Opinion Evidence

The ALJ engaged in a limited analysis of the opinion evidence while focusing heavily on particular aspects of Dr. Malik's pain clinic notes. [Tr. 30] Shepperson reported that he was "not active" prior to his October 2014 laminectomy surgery. [Tr. 425] He rated his low back pain as nine out of ten and stated that pain caused him severe functional impairments. *Id.* Malik recorded his functional status as "active" when Shepperson returned to the pain clinic following surgery. [Tr. 417] However, Shepperson continued to consistently rate his low back pain as not improving and complained of severe functional impairments with most daily activities. [Tr. 405-17]

The ALJ gave little weight to the opinions of Dr. Nold and Michael Jones, reasoning that they were rendered prior to Shepperson's laminectomy and were inconsistent with Dr.

Malik's records, "which reveal that [Shepperson's] symptoms have improved with treatment." [Tr. 30] He also gave little weight to Dr. Hunt's opinion, finding that it was inconsistent with the record. The ALJ concluded simply that the RFC was supported by "the notes that treatment has improved the claimant's symptoms, the objective medical evidence, and the opinions of the state agency consultants which are given significant weight as being consistent with the record as a whole." [Tr. 31]

ALJs generally must afford controlling weight to the opinions of treating physicians.[1] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009). If the opinion of a treating source is not given controlling weight, the ALJ must apply certain factors including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source" in deciding what weight to give the opinion. *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)). The reasons must be "supported by evidence in the case record" and "sufficiently specific to make clear to any subsequent reviewers the weight [given] to the . . . opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5). In this case, there is no indication that the ALJ considered the required factors in deciding how much weight to assign to Dr. Hunt's opinion.

ALJs also must provide a meaningful explanation regarding the weight given to the opinions of state agency consultants. 20 C.F.R. § 404.1527(f)(2)(ii). *See Ott v. Comm'r*

---

[1] The "treating physician rule" applies to claims filed before March 27, 2017. 20 C.F.R. § 404.1527.

*of Soc. Sec.*, No. 1:08-cv-399, 2009 WL 3199064, at *3 (S.D. Ohio Sept. 29. 2009). Such opinions can be given weight only insofar as they are supported by the record. SSR 96-6, 1996 WL 374180, *2. Here, the ALJ did not refer to the consultants by name, but afforded their opinions significant weight simply because they were "consistent with the record as a whole." [Tr. 31] The ALJ's terse assessment of the consultants' (identical) opinions constitutes error because he did not sufficiently explain the reasons for the weight given. *See* 1996 WL 374180, *2. He failed to identify any specific evidence of record with which the consultants' opinions were consistent. Additionally, the ALJ failed to acknowledge that, like the opinions he discounted, the consultants' opinions were rendered prior to Shepperson's laminectomy.

Finally, Shepperson's subjective reports of being "active" following his laminectomy, considered in isolation, do not constitute substantial evidence to support a finding that he is not disabled. Dr. Malik did not provide an opinion regarding Shepperson's functional abilities. Instead, these entries in the record represent the subjective component of Malik's office notes. The notes are unaccompanied by any explanation of what "active" means in the particular context. Each note makes reference to complaints of severe pain and extreme functional limitations, which are consistent with Shepperson's testimony and statements to Dr. Hunt that his condition did not improve after surgery. *See Goble v. Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010) (ALJ cannot "cherry-pick" facts supporting a finding of non-disability while ignoring evidence that points to disability). Based on the foregoing, the ALJ's decision was not supported by substantial evidence.

## B. Admission of Exhibits/Qualification of Vocational Expert

The claimant was represented by counsel during the administrative hearing. He contends that the ALJ failed to identify and admit exhibits and failed to qualify the vocational expert. [Record No. 9-1] He argues that these alleged omissions "confused the record" such that the ALJ's decision is not based on substantial evidence.

Shepperson cites the Hearings, Appeals and Litigation Law Manual (HALLEX) I-2-6-58 for the proposition that ALJ did not follow the proper procedures for making exhibits a part of the record at the beginning of the administrative hearing. [Record No. 9-1, p. 14] However, HALLEX procedures are not binding on courts reviewing administrative proceedings. *Caudill v. Astrue*, No. 09-CV-70, 2010 WL 148806, at *4 (E.D. Ky. Jan. 14, 2010). *See also Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000). Further, Shepperson has not shown that he was prejudiced by the ALJ's alleged failure to follow the formalities for introducing exhibits. Shepperson's attorney stated during the administrative hearing that the ALJ was in possession of all records and the ALJ affirmed that he had reviewed all records. [Tr. 57] And there is no indication that counsel did not have an opportunity to make objections. Further, the claimant has not identified any specific objection that might have been made.

Similarly, Shepperson has not shown that he was prejudiced by the ALJ's alleged failure to adhere to HALLEX guidelines regarding qualification of a vocational expert. Shepperson's attorney failed to make a contemporaneous objection regarding qualification of the VE. Further, the VE's resume is included in the administrative record and the claimant has failed to make any specific objection to the qualifications outlined in that

document. [Tr. 235-36] Accordingly, any failure to follow the HALLEX procedures was harmless and these arguments are without merit.

C. Conclusion

Having concluded that remand is necessary to allow the ALJ to reconsider the opinion evidence, it is not necessary at this time to consider whether the ALJ erred in determining the Plaintiff's RFC. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Larry Lee Shepperson's Motion for Summary Judgment [Record No. 9] is **GRANTED**, in part, to the extent that he seeks a remand for further administrative proceedings. The motion is **DENIED** to the extent he seeks an award of benefits,.

2. Commissioner Nancy A. Berryhill's Motion for Summary Judgment [Record No. 11] is **DENIED**.

3. The decision of Administrative Law Judge Don Paris is **REMANDED** for further administrative proceedings consistent with this opinion and pursuant to sentence four of 42 U.S.C. 405(g).

This 9th day of August, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge